1
2
3                    UNITED STATES DISTRICT COURT
4                  FOR THE NORTHERN DISTRICT OF CALIFORNIA
5                              OAKLAND DIVISION

6
7  ERIC KOVESDY, an individually and sole         Case No: C 10-02012 SBA
   proprietor of business known as Humex
8  Income Tax,                                    **ORDER GRANTING IN PART
                                                  AND DENYING IN PART
9                 Plaintiff,                      DEFENDANTS' MOTION TO
                                                  DISMISS AND DENYING
10       vs.                                      PLAINTIFF'S MOTION FOR
                                                  PRELIMINARY INJUNCTION**
11 HEDY KOVESDY, an individual; HUMEX
   INCOME TAX, INC., an entity; SUZANNE           Dkt. 5, 17
12 NAGY, an individual; and DOES 1 through
   50, inclusive,
13
                  Defendants.
14

15      Plaintiff Eric Kovesdy ("Eric" or "Plaintiff") brings the instant action, inter alia, for
16 misappropriation of trade secrets under California's Uniform Trade Secrets Act ("UTSA"),
17 Cal.Civ.Code §§ 3426-3426.11, and trademark infringement under the Lanham Act, 15
18 U.S.C. § 1125(a), against his stepmother, Defendant Hedy Kovesdy ("Hedy") and others.[1]
19 The parties are presently before the Court on: (1) Defendants' motion to dismiss (Dkt. 5);
20 and (2) Plaintiff's motion for preliminary injunction (Dkt. 17). Having read and considered
21 the papers filed in connection with this matter and being fully informed, the Court hereby
22 GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss and DENIES
23 Plaintiff's motion for preliminary injunction. The Court, in its discretion, finds this matter
24 suitable for resolution without oral argument. See Fed.R.Civ.P. 78(b); N.D. Cal. Civ. L.R.
25 7-1(b).
26
27 ─────────────────
        [1] For clarity, the Court refers to persons involved in this action with the surname
28 "Kovesdy" by their first name.

# I. BACKGROUND

## A. FACTUAL SUMMARY

In 1983, Peter Kovesdy ("Peter") opened a professional tax practice known as Humex Income Tax ("Humex"), which he operated as a sole proprietorship. Compl. ¶ 8, Dkt. 1; Decl. of Eric Kovesdy in Supp. of Mot for Prelim. Inj ("E. Kovesdy Decl.") ¶ 2, Dkt. 9. Over time, Peter grew his practice to include over a thousand clients. E. Kovesdy Decl. ¶ 2. Peter chose the name "Humex" to honor his wife Elizabeth's Mexican descent, and his own Hungarian descent. Id. Eric is the son of Peter and Elizabeth, who divorced in 1992. Id. ¶ 3.

In 1997, Peter married Hedy. Id. Subsequently, Hedy became a Certified Tax Professional and performed income tax preparation work for Humex from between 2003 through 2009. Decl. of Hedy Kovesdy in Supp. of Opp'n to Mot. for Prelim. Inj. ("H. Kovesdy Decl.") ¶ 2, Dkt. 24-2; E. Kovesdy Decl. ¶ 3. Between 2006 and 2008, Eric worked part-time at Humex. E. Kovesdy Decl. ¶ 5. He began working at Humex on a full-time basis in 2009. Id. Another individual, Defendant Suzanne Nagy ("Nagy"), also worked at Humex as an administrative assistant and part-time bookkeeper from about 1997 to 2009. Compl. ¶ 9; E. Kovesdy Decl. ¶ 3.

Peter died suddenly on May 10, 2009. E. Kovesdy Decl. ¶ 6. Hedy challenged Peter's will in probate court, claiming that it improperly favored others, including Eric, over her. Id. The special administrator overseeing Peter's estate requested that Eric continue to operate Humex pending resolution of the probate dispute. Id. Thus, Eric continued to run Humex from May 10, 2009, through October 31, 2009. Id. According to Hedy, Eric also began operating a separate income tax preparation service called Kovesdy Income Tax, and allegedly began to divert Humex customers to his new business. H. Kovesdy Decl. ¶ 4.

In November 2009, Hedy and the special administrator reached a written agreement resolving the dispute concerning Peter's will. Compl. ¶ 10. The agreement included an acknowledgement that Humex was Peter's separate property, and that Hedy retained the

right to object to the estate's proposed sale of Humex to Eric.  Id.; E. Kovesdy Decl. Ex. A at 3.  On November 16, 2009, the special administrator provided notice to Hedy and the other beneficiaries of the estate's intention to sell Humex to Eric.  Id.  Hedy did not object.  Id. ¶ 10.  On December 1, 2009, the probate court approved the sale of Humex to Eric, which included all of Humex's client lists, files and records.  Id. ¶ 9.  According to Hedy, in December 2009, Eric shut down Humex and began operating exclusively under the name Kovesdy Income Tax.  H. Kovesdy Decl. ¶ 4.

In the meantime, Hedy and Nagy decided to launch their own tax preparation business under the name Humex Income Tax, Inc. ("HITI").  Id. ¶ 13; H. Kovesdy Decl. ¶ 5; Nagy Decl. ¶ 6.  Eric claims that Defendants improperly accessed Humex's computers to obtain the company's client contact information, and began soliciting Humex's clients to switch to their new company.  Compl. ¶ 14.  In addition, he alleges that Defendants advised Humex clients to cancel their appointments with him, and told them that he was "unqualified," "uncertified," and "unprofessional," and had been the subject of complaints.  For their part, Defendants claim that they legitimately sought new clients by distributing flyers throughout the local Hungarian community (many of whom were Humex clients) and at Laundromats, apartment complexes, dinners and social gatherings.  H. Kovesdy Decl. ¶ 6.  They deny targeting Humex clients specifically, deny representing themselves as being affiliated with Humex and deny "disparaging" Eric.  Id. ¶ 7.

### B.   PROCEDURAL HISTORY

On April 14, 2010, Eric filed the instant action against Hedy, Nagy and HITI in San Mateo Superior Court, alleging eight claims for relief, as follows:  (1) misappropriation of trade secrets; (2) intentional interference with contractual relationship; (3) intentional interference with prospective economic advantage; (4) conversion; (5) trademark infringement; (6) false designation of origin/unfair competition; (7) defamation/trade libel; and (8) unfair competition in violation of California Business and Professions Code § 17200 .  On May 10, 2010, Defendants removed the action to this Court on the ground

that Plaintiff's claims under the Lanham Act arise under federal law.  28 U.S.C. §§ 1331, 1441.

Two motions are before the Court.  First, Defendants move to dismiss Plaintiffs' second, third, fourth and eighth claims for relief on the ground that they are preempted by the UTSA.  In addition, Defendants seek the dismissal of Plaintiff's seventh claim for defamation/trade libel and eighth claim, which alleges a violation of California Business and Professions Code § 17200, also known as California's Unfair Competition Law ("UCL").  The second motion under consideration is Plaintiff's motion for preliminary injunction in which he seeks to enjoin Defendants from soliciting Humex's customers, using the "Humex" name and engaging in any "other activity constituting unfair competition," and to return any confidential information belonging to Humex.  Pl.'s Mot. for Prelim. Inj. at 13.  The Court discusses these motions in turn.

## II. DEFENDANTS' MOTION TO DISMISS

### A. LEGAL STANDARD

A Rule 12(b)(6) dismissal for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) insufficient facts to support a cognizable legal claim.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).  Those facts must be sufficient to push the claims "across the line from conceivable to plausible[.]"  Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1951 (2009) (quoting Twombly, 550 U.S. at 557).  In deciding a Rule 12(b)(6) motion, the court  "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice[.]"  Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold and Easement in the Cloverly Subterranean, Geological Formation, 524 F.3d 1090, 1096 (9th Cir. 2008).  The court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007).  If the

complaint is dismissed, plaintiff generally should be afforded leave to amend unless it is clear the complaint cannot be saved by amendment.  See Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

     **B.**     **ANALYSIS**

          **1.**     **"Preemption" under the UTSA**

Defendants contend that Plaintiff's claims for intentional interference with contractual relationship, intentional interference with prospective economic advantage, conversion and unfair competition under the UCL are preempted by the UTSA. Defs.' Mot. to Dismiss at 3.  The UTSA provides the exclusive remedy for trade secret misappropriation under California law.  See Silvaco Data Systems v. Intel Corp., 184 Cal.App.4th 210, 236 (2010) ("We thus reaffirm that CUTSA provides the exclusive civil remedy for conduct falling within its terms, so as to supersede other civil remedies 'based upon misappropriation of a trade secret.'") (citation omitted).  The UTSA therefore "preempts" all common law claims that are "'based on the same nucleus of facts as the misappropriation of trade secrets claim for relief.'"  K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc., 171 Cal.App.4th 939, 958 (2009) (quoting Digital Envoy, Inc. v. Google, Inc., 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005)).  In other words, preemption generally applies where "there is no material distinction" between the wrongdoing underlying the UTSA claim and the non-UTSA claim.  See Phoenix Techs. Ltd. v. DeviceVM, No. C 09-04697 CW, 2009 WL 4723400, at *4-5 (N.D. Cal. Dec. 8, 2009).  However, neither "other civil remedies that are not based upon misappropriation of a trade secret" nor contractual or criminal remedies are preempted.  Cal. Civ.Code § 3426.7(b).

Here, the claims at issue are largely based on conduct unrelated to Plaintiff's first claim for relief for misappropriate of trade secrets.  Plaintiff's second and third claims for intentional interference with contractual relationship and prospective economic advantage, respectively, allege that Defendants interfered with and disrupted Eric's business relationships by soliciting his clients and misleading his them into believing that he was affiliated with HITI.  Compl. ¶¶ 25, 31.  His fourth claim for conversion alleges that

1  Defendants are maintaining possession of Eric's computer without his authorization. Id.
2  ¶¶ 37-38.  In his eighth claim under the UCL, Plaintiff avers that Defendants engaged in
3  unfair competition by diverting "substantial amounts of business" from Eric to themselves.
4  Id. ¶ 64.  These claims do not appear to rely on Defendants' alleged misappropriation of
5  trade secrets, and hence, are not preempted by the UTSA.
6        In their reply, Defendants tacitly concede that the claims at issue are not, in fact,
7  based entirely on misappropriation of trade secrets.  Defs.' Reply at 2.  Nonetheless, they
8  argue that because each of those claims incorporates by reference each of the preceding
9  paragraphs of the Complaint, it appears that the allegations regarding Defendants'
10 misappropriation of trade secrets necessarily form at least part of the other claims. Id.  As
11 such, Defendants request that the Court dismiss such claims with leave to amend "to clarify
12 that they are not predicated upon the misappropriation of trade secrets." Id.  Defendants
13 ignore the Court's obligation on a Rule 12(b)(6) motion to construe the allegations in a
14 light most favorable to Plaintiff.  Consequently, the Court will construe Plaintiff's claims as
15 being based on conduct not governed by the UTSA. See Phoenix Techs. Ltd., 2009 WL
16 4723400, at *5 (construing plaintiff's tort and UCL claims as being based only on conduct
17 outside the scope of the UTSA, notwithstanding apparent overlap with trade secrets claim).
18 Obviously, if Plaintiff lacks sufficient evidence to support these claims based on conduct
19 independent of his trade secrets claim, Defendants may move for summary judgment at that
20 time.
21       **2.  Trade Libel**
22       Plaintiff's seventh claim is styled as "defamation/trade libel," even though
23 defamation and trade libel claims are different and protect distinct interests. See Polygram
24 Records, Inc. v. Superior Court, 170 Cal.App.3d 543, 549 (1985).  "The difference between
25 the two types of actions is that an action for defamation is designed to protect the reputation
26 of the plaintiff, and the judgment vindicates that reputation, whereas the action for
27 disparagement is based on pecuniary damage and lies only where such damage has been
28 suffered." Microtec Research, Inc. v. Nationwide Mut. Ins. Co., 40 F.3d 968, 972 (9th Cir.

1994) (internal quotations and citation omitted). Defamation "involves the intentional publication of a statement of fact which is false, unprivileged, and has a natural tendency to injure or which causes special damage." Gilbert v. Sykes, 147 Cal.App.4th 13, 27 (2007).[2] A cause of action for trade libel requires: (1) a publication, (2) which induces others not to deal with plaintiff, and (3) special damages. See Aetna Cas. & Sur. Co., Inc. v. Centennial Ins. Co., 838 F.2d 346, 351 (9th Cir. 1988).

Defendants contend that Plaintiff has failed to state a claim for trade libel because the statements at issue (i.e., characterizing Eric as being "unqualified," uncertified," and "unprofessional") were directed at Eric personally, as opposed to his "property." Defs.' Mot. at 3. This contention lacks merit. In a trade libel claim, the salient objects of the disparagement are "the goods a plaintiff sells or *the character of his . . . business*." Aetna Cas. & Sur. Co., Inc., 838 F.2d at 351 (emphasis added). Defendants' allegedly defamatory statements to third parties challenge Eric's competence to provide tax preparation services, which certainly bears upon the character of his business.

Defendants counter that because the defamatory statements were made after Eric ceased operating under the "Humex" name, Eric cannot sue on behalf of a business that no longer was in operation at the time the actionable conduct occurred. Defs.' Reply at 3. This argument was not raised in Defendants' moving papers, and thus, it is not properly before the Court. See Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007) ("[a] district court need not consider arguments raised for the first time in a reply brief."). In addition, Defendants ignore that the Complaint alleges that the disparaging remarks were made about *Eric*, and not Humex. See Compl. ¶ 14 ("Eric is informed that Defendants told Humex's clients that *Eric* was 'unqualified,' 'uncertified,' and 'unprofessional,' and that *he* had been the subject of unspecified complaints"). Moreover, to the extent that Eric was operating as

---

[2] A statement that "[t]ends directly to injure [plaintiff] in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits" is considered slander per se. Cal.Civ.Code § 46.

a sole proprietorship, there is no legal distinction between Eric and business under whose name he was operating.  See Providence Wash. Ins. Co. v. Valley Forge Ins. Co., 42 Cal.App.4th 1194, 1199 (1996) (sole proprietor is legally the same as his business). Defendants' motion to dismiss Plaintiff's seventh claim for defamation/trade libel is denied.

### 3. UCL

The UCL makes actionable any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  "Each prong of the UCL is a separate and distinct theory of liability."  Birdsong v. Apple, Inc., 590 F.3d 955, 959 (9th Cir. 2009). "[A]n action based on [the UCL] to redress an unlawful business practice 'borrows' violations of other laws and treats these violations . . . as unlawful practices, independently actionable under section 17200 *et seq.* and subject to the distinct remedies provided thereunder."  Farmers Ins. Exch. v. Super. Court, 2 Cal.4th 377, 383 (1992) (quotations and citations omitted); Chabner v. United Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000).

The Complaint does not allege which prong or prongs of the UCL forms the basis of his claim.  Rather, Plaintiff merely alleges that "Defendants' acts of unfair competition are causing and will continue to cause great irreparable injury to Eric in that the conduct will continue to result in the diversion from Humex Income Tax of substantial amounts of busines which will likely never be reclaimed."  Compl. ¶ 64.  Though Plaintiff's UCL claim does not specifically identify the actionable conduct by Defendants, Plaintiff asserts in his opposition that his UCL claim incorporates "all prior allegations of the complaint," including his trademark infringement claim under the Lanham Act.  Pl.'s Opp'n at 6. Plaintiff is correct that a violation of Lanham Act may support a claim under the UCL.  See Cleary v. News Corp., 30 F.3d 1255, 1262-63 (9th Cir. 1994).  However, Plaintiff's UCL claim does not incorporate the allegations that form the basis of his trademark infringement claim.  The trademark infringement claim is set forth in paragraphs 41 through 59 of the Complaint, while Plaintiff's UCL claim only incorporates paragraphs 1 through 40.  See Compl. ¶ 62.  Since Plaintiff cannot, at this juncture, rely on Defendants' alleged violation

of the Lanham Act as the basis for his UCL claim, Plaintiff's eighth claim is dismissed, with leave to amend.[3]

## III. PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

### A. LEGAL STANDARD

To obtain preliminary injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) a balance of equities tips in the favor of the moving party; and (4) that an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., ---U.S. ---, 129 S.Ct. 365, 376 (2008). This is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Id. This "clear showing" requires Plaintiffs to show more than a mere "possibility" of irreparable harm, but instead they must "demonstrate that irreparable injury is likely in the absence of an injunction." Id. at 375 (emphasis in original); See Am. Trucking Ass'ns Inc. v. City of Los. Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009).

### B. LIKELIHOOD OF SUCCESS

#### 1. UCL/Trademark Infringement

As discussed above, the basis of Plaintiff's UCL claim is not entirely clear. Though Plaintiff appears to rely on the "unlawful" prong of the UCL based on Defendants' alleged violation of the Lanham Act, the Complaint, as currently pled, is insufficient in that respect. But even if the pleadings were sufficient, Plaintiff's motion is not. Rather, after reciting two pages worth of boilerplate law regarding the UCL, Plaintiff simply makes a one-sentence long, non-sequitur argument that: "Even if Humex's client information and the data did not rise to the level of a trade secret, injunctive relief would nevertheless be

---

[3] Should Plaintiff amend his Complaint, he should specifically identify which prong or prongs of the UCL form the basis of his claim. In addition, Plaintiff should acquaint himself with the specific pleading requirements applicable to UCL claims. See, e.g., Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir.2009) (holding that UCL claims sounding in fraud must meet the heightened pleading standard of Rule 9(b); In re Tobacco II Cases, 46 Cal.4th 298, 328 (2009) (claim based on "fraudulent" prong of the UCL requires a showing of reliance).

appropriate under Section 17200." Pl.'s Mot.for Prelim. Inj. at 8. Whether or not injunctive relief is available is inapposite. Rather, to obtain preliminary injunctive relief, Plaintiff must first show, as a threshold matter, that he is likely to succeed on his claim for trademark infringement—and by extension—his claim under the UCL. Plaintiff's moving papers are devoid of any such argument. Though Plaintiff belatedly attempts make such a showing in his reply brief, see Pl.'s Reply at 2-3, the Court does not consider new arguments presented for the first time in a reply brief. See Zamani, 491 F.3d at 997. The Court therefore concludes that Plaintiff has failed to demonstrate a likelihood of success on his claim under the UCL.

### 2. Misappropriation of Trade Secrets

To prevail on its claim for misappropriation of trade secrets, plaintiff must demonstrate that: (1) the information at issue qualifies as a "trade secret" under California law, and (2) the defendant "misappropriated" those secrets. Cal. Civ.Code § 3426.1(b); see MAI Sys. Corp. v. Peak Computer, Inc., 991 F.2d 511, 520 (9th Cir. 1993); Am. Credit Indem. Co. v. Sacks, 213 Cal. App. 3d 622, 630-31 (1989). The UTSA defines a "trade secret" as follows:

> "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
> (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1(d). Both of these elements must be established before a protectable trade secret can be found. See Sacks, 213 Cal. App. 3d at 630-31.

The threshold question presented is whether Plaintiff has established that Humex's customer list qualifies as a protectable trade secret. That determination depends in large part on whose resources were used to generate the list. A customer list which is the product of a "substantial amount of time, expense and effort" on the part of the employer, has

1   commercial value, and is not readily ascertainable to other competitors is generally
2   considered trade secret information.  See Courtesy Temporary Serv., Inc. v. Camacho, 222
3   Cal.App.3d 1278, 1287-88 (1990).  As the Camacho court explained, "it is [the employer's]
4   'work effort,' or process of acquiring and retaining clientele, that constitutes a protectable
5   trade secret."  Id.  In contrast, courts have found that a customer list which is the product of
6   a former employee's personal efforts is not a trade secret of the employer.  E.g., Moss,
7   Adams & Co. v. Shilling, 179 Cal. App. 3d 124, 129 (names and addresses on a
8   confidential customer list were not trade secrets where the defendants had knowledge of
9   those names and addresses through "personal contact").  The burden of establishing that
10  particular information constitutes a protectable trade secret rests with the plaintiff.  See
11  MAI Sys. Corp. v. Peak Computer, 991 F.2d 511, 522 (9th Cir. 1993).

12       In the instant case, Plaintiff make no effort to establish that the Humex's customer
13  list and data were the result of substantial amount of time, expense and effort on the part of
14  Humex.  Nor has Plaintiff shown that the list has commercial value and is not readily
15  ascertainable by competitors.  Even if Plaintiff had established that the customer list
16  constituted trade secret information belonging to him, the second component essential to a
17  trade secret—reasonable efforts to maintain the secrecy of such information—is lacking.
18  Plaintiff's supporting declaration is silent as to what efforts, if any, Humex made to
19  maintain the confidentiality of its customer database.  Indeed, Plaintiff admits that he
20  allowed Nagy to borrow the Humex computer containing customer information so that she
21  could work from home. E. Kovesdy Decl. ¶ 11.  Though Plaintiff asserts that he never told
22  Nagy that she could keep the computer or the data stored in it, he fails to provide any
23  evidence of any affirmative steps taken to protect the confidentiality of the customer data.
24  In view of Plaintiff's failure to provide the requisite evidentiary support necessary to

- 11 -

prevail on a claim for misappropriation of trade secrets, the Court finds that Plaintiff has not made a sufficient showing for a preliminary injunction.[4]

### C. IRREPARABLE HARM

Plaintiff bears the burden of showing a "likelihood of irreparable injury—not just a possibility—in order to obtain preliminary relief." Winter, 129 S.Ct. at 375. Here, Plaintiff posits that "it cannot be doubted that allowing Defendants to use Humex's name and client information to solicit Eric's clients will irreparably injury Eric." Pl.'s Mot. for Prelim. Inj. at 12. Plaintiff's conclusory assertion that he will suffer irreparable harm is unsupported by any proffer of evidence. As such, Plaintiff has made an inadequate showing of immediate and irreparable harm to justify a preliminary injunction. See Caribbean Marine Servs., Inc. v. Baldridge, 844 F.2d 668, 674-75 (9th Cir. 1988) (holding that district court erred in granting preliminary injunction where it failed to require plaintiffs to show that the harm alleged was "imminent or likely").

## IV. CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1. Defendants' motion to dismiss (Dkt. 5) is GRANT IN PART AND DENIED IN PART. Plaintiff's eighth claim under the UCL is DISMISSED WITH LEAVE TO AMEND. Plaintiff shall have seven (7) days from the date this Order is filed to file an amended complaint, consistent with the Court's rulings, as set forth above. In the event Plaintiff fails to file an amended complaint within that time-frame, the dismissal of his UCL claim, as discussed above, will be deemed to be with prejudice. Defendants shall file their response to the amended complaint no later than fourteen (14) days after the deadline for Plaintiff file his amended pleading.

---

[4] Plaintiff also contends that he has shown a likelihood of success with respect to Defendants' alleged violations of California Business and Professions Code § 17500 and § 14330. Pl.'s Mot. for Prelim. Inj. at 9-10. Neither of these claims is alleged in the Complaint, however. Should Plaintiff desire to add these claims to his Complaint, he must either file an appropriate stipulation and proposed order, or if no stipulation is possible, file a motion for leave to amend under Rule 15(a).

2.	Plaintiff's motion for preliminary injunction (Dkt. 17) is DENIED.

3.	The Case Management Conference previously scheduled for September 14, 2010 is CONTINUED to **November 18, 2010 at 3:30 p.m.**  Prior to the date scheduled for the conference, the parties shall meet and confer and prepare a joint Case Management Conference Statement.  The joint statement shall be filed no later than ten (10) days prior to the conference and shall comply with the Standing Order for All Judges of the Northern District of California and the Standing Order of this Court.  Plaintiff shall be responsible for filing the statement as well as for arranging the conference call.  All parties shall be on the line and shall call (510) 637-3559 at the above indicated date and time

IT IS SO ORDERED.

Dated: September 13, 2010

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge